# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| AMANDA CALDERA, as personal representative of the Estate of DAWN CALDERA, | No. 53976-4-II |
| Appellant, | |
| v. | UNPUBLISHED OPINION |
| SUSAN PARSONS and JOHN DOE PARSONS, and the marital community comprised thereof, | |
| Respondent. | |

MAXA, J. – In this personal injury action, Amanda Caldera, as personal representative of the estate of Dawn Caldera, appeals the trial court's grant of a motion to exclude a medical expert witness Caldera disclosed two months after the discovery cutoff from testifying at trial. Although the trial subsequently was continued for nine months, the trial court refused to change its ruling. After a trial in which Caldera had no medical expert, a jury rendered a verdict in favor of Caldera and awarded damages. Caldera seeks a retrial on the issue of damages only because her expert was improperly excluded.

The law is clear that before excluding the testimony of a late-disclosed trial witness, a trial court must explicitly consider the *Burnet* factors: (1) whether the violation was willful or deliberate, (2) whether the violation substantially prejudiced the opposing party's ability to

prepare for trial, and (3) whether lesser sanctions probably would suffice. *Jones v. City of Seattle*, 179 Wn.2d 322, 338, 314 P.3d 380 (2013) (citing *Burnet v. Spokane Ambulance*, 131 Wn.2d 484, 494, 933 P.2d 1036 (1997)). The trial court failed to consider the *Burnet* factors in excluding the medical expert and in refusing to change its ruling.

We conclude that the trial court erred when it failed to consider the *Burnet* factors before it excluded Caldera's late-disclosed medical expert from testifying and that the error was not harmless. We decline to undertake our own *Burnet* analysis. Finally, we grant Caldera's request to reassign the case to a new judge. Accordingly, we remand to a new judge for the trial court to consider the *Burnet* factors to determine whether exclusion of Caldera's medical expert was appropriate both before and after the trial continuance.

## FACTS

*Background*

In 2015, Dawn Caldera and Parsons were involved in a car accident. In June 2017, Dawn[1] sued Parsons in Clark County Superior Court, alleging that Parsons' negligence caused her special and general damages. She claimed that the accident caused injuries to her neck, back and shoulder, headaches, and a closed head injury. Her total claimed medical expenses were $44,066.55. Dawn subsequently passed away from cancer, and the complaint was amended to substitute Caldera as the personal representative of her estate as the plaintiff.

In November 2017, Caldera responded to Parsons' interrogatories. In response to an expert witness interrogatory, Caldera stated that it was not presently known what experts would testify at trial and that "at such time plaintiff retains expert witnesses this response will be

---

[1] This opinion refers to Dawn Caldera by her first name to distinguish her from Amanda Caldera. No disrespect is intended.

supplemented." Clerk's Papers (CP) at 118. Parsons provided a similar response to Caldera's expert interrogatory.

In January 2018, the trial court entered a case scheduling order setting the trial for December 10, 2018. Caldera's disclosure of primary witnesses was due on February 16, Parsons' disclosure of primary witnesses was due on March 9, and disclosure of rebuttal witnesses was due on March 30. The discovery cutoff was September 17. The parties were required to exchange trial witnesses, exhibit lists, and documentary evidence by October 29. The case scheduling order was enforceable under Clark County Local Civil Rule (LCR) 40(c)(6).

*Caldera's Late Disclosure of Expert Witness*

On September 17, the day of the discovery cutoff, Parsons emailed Caldera a copy of a report dated August 25 prepared by his medical expert Dr. Paul Tesar regarding his review of Dawn's medical records. Parsons submitted the report and Dr. Tesar's curriculum vitae as supplemental discovery responses.

Dr. Tesar's report summarized Dawn's entire medical history between 2005 and 2017. His opinion was that Dawn sustained a mild cervicodorsal strain and a mild head contusion in the car accident. He did not believe that any treatment was required after three months from the accident. Dr. Tesar opined that any symptoms that Dawn experienced beyond that time period were not related to the accident. Dr. Lynne Bell concurred with Dr. Tesar's opinions.

On October 10, Caldera provided supplemental responses to Parsons' discovery requests in which she identified Dr. Reed Wilson as an expert witness to testify regarding Dawn's injuries, medical treatment, and medical expenses. Caldera later stated that she had to find a new expert because Dr. Wilson had a professional relationship with Parsons' attorney.

On November 12, Caldera emailed Parsons a "global supplement of all discovery and witness disclosures" identifying Dr. Dennis Chong as a new medical expert. The supplement identified Dr. Chong "as an expert to testify to the reasonableness and necessity of plaintiff's treatment following the motor vehicle accident in this case" and stated that "[h]e will provide testimony explaining the sum and substance of plaintiff's treatment." CP at 26. In an accompanying letter, Caldera stated that the expert witness disclosure "discloses no opinions that have not been in this case since the lawsuit was filed. But, due to scheduling and other issues I need to disclose this expert for witness availability reasons." CP at 84. Caldera also stated that she would arrange Dr. Chong's deposition if Parsons wanted to depose him and offered to pay any expedited fees associated with a deposition.

Parsons noted the late identification of an expert witness and stated that she would be filing a motion to exclude all late disclosures. In response, Caldera stated that she had offered to allow Parsons to depose Dr. Chong and to pay any extra cost, which is all that was required under *Burnet*.

On November 16, Caldera gave Parsons notice that she would be preserving Dr. Chong's testimony for trial by video on December 4 in Seattle. Parsons apparently objected to the video deposition.

On November 19, Parsons filed a motion to exclude Dr. Chong's testimony because Caldera (1) disclosed him as a witness almost two months after the discovery cutoff in violation of the case scheduling order, and (2) failed to provide the substance of Dr. Chong's opinions in violation of CR 26(b)(5). Parsons also asserted that Caldera did not provide 20 day notice of Dr. Chong's video deposition in violation of CR 30(8)(a) and scheduled the deposition without consulting Parsons' counsel.

In Caldera's response to Parsons' motion to exclude, she argued that the trial court was required to consider the *Burnet* factors before excluding Dr. Chong's testimony and provided an extensive analysis of those factors. Caldera asserted that admitting Dr. Chong's testimony would not prejudice Parsons because "Dr. Chong does not have a single new or unique opinion in this case. The only thing he is going to testify to is to the medical treatment contained in plaintiff's medical records." CP at 59 (emphasis omitted).

The parties agreed that the trial court would rule on Parsons' motion to exclude Dr. Chong's testimony without oral argument. On November 30, the trial court granted Parsons' motion to exclude Dr. Chong on the basis of Caldera and Parsons' briefs only. The court's order listed the documents on which it relied and in a handwritten notation, stated, "Motion to exclude expert is granted the court reserves all costs at this time." CP at 171. The court's order did not address the *Burnet* factors or include any additional findings.

On December 10, the first day of trial, Caldera filed a motion to allow her to submit Dr. Chong's deposition testimony to the jury. The motion was styled as a motion in limine, motion for reconsideration, or a motion to vacate. Caldera again emphasized that the trial court could not exclude Dr. Chong without conducting a *Burnet* analysis.

After the parties presented oral argument regarding Caldera's motion, Caldera's attorney experienced a medical issue. The trial court and the parties agreed to put the trial on hold and continue it to a later date. The trial eventually was rescheduled for August 2019.

On December 20, the trial court entered an order denying what the court referred to as Caldera's motion for reconsideration. The order stated, "For all the reasons previously found in the court's order of November 30, 2018, the Motion for Reconsideration is hereby denied." CP at 260.

*Renewed Motion to Allow Dr. Chong Testimony*

In April 2019, Caldera filed a motion to allow Dr. Chong to testify, repeating the same arguments in his earlier briefs regarding consideration of the *Burnet* factors and emphasizing that exclusion was even more inappropriate because the trial had been rescheduled for August 2019. The trial court denied Caldera's motion. The court stated that Caldera was asking for "another bite at the apple" and that the case schedule still applied even though the trial had been continued. CP at 339.

*Jury Trial and Verdict*

At trial, Caldera called five witnesses. None of them were medical experts. Caldera's only physician witness did not testify because she became unavailable during trial. Dawn's medical records and medical bills from several providers were admitted as exhibits. Dr. Tesar testified for Parsons, although his report was not admitted into evidence. Parsons also offered and the trial court admitted additional medical records relating to Dawn.

The jury returned a verdict finding that both Parsons and Caldera were negligent, and that Parsons was responsible for 90 percent of Dawn's injuries. The jury found total damages in the amount of $29,000. The trial court entered judgment for Caldera in the net amount of $26,624.50 inclusive of statutory fees and costs. Caldera appeals the jury's award of damages only.

ANALYSIS

A.    EXCLUSION OF LATE-DISCLOSED EXPERT WITNESS

Caldera argues that the trial court erred by excluding Dr. Chong from testifying without considering the *Burnet* factors. We agree.

1.    Legal Principles

Under CR 37(b)(2), the trial court has discretion to impose sanctions against a party who fails to comply with a discovery order.  Available sanctions include the exclusion of evidence. CR 37(b)(2)(B).  CR 37(d) also allows the trial court to impose the sanctions allowed under CR 37(b)(2), including the exclusion of evidence, for the failure of a party to respond to interrogatories.  *Magaña v. Hyundai Motor Am.,* 167 Wn.2d 570, 584, 220 P.3d 191 (2009).

However, before a trial court may impose one of the "harsher remedies" under CR 37(b), it must first consider the *Burnet* factors: (1) whether the violation was willful or deliberate, (2) whether the violation substantially prejudiced the opposing party's ability to prepare for trial, and (3) whether lesser sanctions probably would suffice.  *Jones*, 179 Wn.2d at 338.  The exclusion of a witness from testifying at trial is one of the severe remedies to which the *Burnet* factors apply. *Teter v. Deck*, 174 Wn.2d 207, 217, 274 P.3d 336 (2012).  In fact, the court in *Jones* emphasized that "it has been clear since at least 2006 that trial courts must consider the *Burnet* factors before excluding witnesses."  179 Wn.2d at 340; *see also Blair v. Ta-Seattle East No. 176*, 171 Wn.2d 342, 348-49, 254 P.3d 797 (2011).

Consideration of the *Burnet* factors is required when the exclusion is based on witnesses who are not timely disclosed pursuant to a case scheduling order.  *Jones*, 179 Wn.2d at 338, 343. There is a presumption that "late-disclosed testimony will be admitted absent a willful violation, substantial prejudice to the nonviolating party, and the insufficiency of sanctions less drastic than exclusion."  *Id.* at 343.  In addition, the *Burnet* factors apply to sanctions imposed for discovery violations.  *Blair*, 171 Wn.2d at 348.

The trial court must make express findings regarding the *Burnet* factors on the record at the time the sanction is imposed.  *Teter*, 174 Wn.2d at 217.  The court in *Teter* stated, "We

cannot emphasize too forcefully the importance of adequate findings to support more severe discovery sanctions such as exclusion of a witness." *Id.* at 210.

We generally review the trial court's exclusion of witnesses for abuse of discretion. *Jones*, 179 Wn.2d at 337. However, we review de novo whether the *Burnet* factors must be considered in a particular case. *Dewitt v. Mullen*, 193 Wn. App. 548, 557, 375 P.3d 694 (2016). In addition, a trial court abuses its discretion by excluding witnesses without considering the *Burnet* factors. *Blair*, 171 Wn.2d at 348-49.

2. Failure to Consider *Burnet* Factors

In opposition to the motion to strike, Caldera informed the trial court that Dr. Chong could not be excluded as a witness without application of the *Burnet* factors. But there is no indication that the court considered the *Burnet* factors before excluding Dr. Chong from testifying in its November 2018 order. The court made no oral findings regarding the *Burnet* factors and the court's written order contained no such findings. This failure to consider the *Burnet* factors or the failure to make appropriate findings constituted obvious error.

Caldera gave the trial court an opportunity to correct its error by filing a motion for reconsideration in which she again argued that the *Burnet* factors must be considered. Again, there is no indication that the court considered the *Burnet* factors before denying the motion.

Caldera once again based her third motion to allow Dr. Chong's testimony on the *Burnet* factors. Again, there is no indication that the court considered the *Burnet* factors before denying the motion. And again the court made no findings regarding those factors.

Parsons concedes that the trial court did not conduct a *Burnet* analysis before entering its three orders regarding Dr. Chong. But she argues that the trial court was not required to consider the *Burnet* factors because the exclusion of Dr. Chong was based on more than the late

8

disclosure.  Specifically, she asserts that (1) Caldera violated CR 26(b)(5) by not providing an expert report or the substance of Dr. Chong's testimony, (2) Caldera failed to supplement answers to her expert interrogatories, and (3) the notice of Dr. Chong's perpetuation deposition was untimely and was not properly served.

Regarding Caldera's failure to provide the substance of Dr. Chong's testimony and supplement interrogatory answers, Parsons fails to recognize that the *Burnet* factors apply to sanctions imposed for discovery violations, not just violation of scheduling orders.  *Blair*, 171 Wn.2d at 348.  Parsons's faulty argument in this regard may have misled the trial court.  In addition, Caldera's disclosure of Dr. Chong was a "global supplement of all discovery and witness disclosures."  CP at 26.

Parsons relies on CR 26(b)(5), which allows a party to obtain through discovery specific information.  But this rule is not self-executing.  The record does not contain the interrogatories Parsons proposed to Caldera, only Caldera's answers.  Parsons purports to quote from the interrogatories in her brief, but the record cite (CP 217-18) is to Caldera's interrogatories to Parsons.  Without the language of the expert interrogatories Parsons propounded to Caldera, Parsons cannot establish that Caldera failed to properly supplement them.  And again, *Burnet* applies even for discovery violations.

Finally, whether Caldera properly scheduled Dr. Chong's perpetuation deposition is material only to whether that deposition could be presented to the jury.  The fact that the perpetuation deposition may have been inadmissible does not support excluding Dr. Chong as a live witness.

Parsons relies on two cases to argue that the trial court did not need to conduct a *Burnet* analysis before excluding Dr. Chong's testimony: *Stevens v. Gordon*, 118 Wn. App. 43, 51-52,

9

74 P.3d 653 (2003), and *Lancaster v. Perry*, 127 Wn. App. 826, 829, 833, 113 P.3d 1 (2005).

However, both cases were decided before *Blair*, *Teter* and *Jones*, which firmly establish that the

trial court must consider the *Burnet* factors any time the court excludes a witness. *Jones*, 179

Wn.2d at 340; *Teter*, 174 Wn.2d at 216-18; *Blair*, 171 Wn.2d at 348-49. Therefore, Parsons'

cases have no precedential value.

We conclude that the trial court erred in failing to consider the *Burnet* factors before

excluding Dr. Chong from testifying.

3. Appellate Court Providing *Burnet* Analysis

Caldera suggests that we apply the *Burnet* factors and determine that it was improper to

exclude Dr. Chong both before the scheduled trial and after the trial was continued. Conversely,

Parsons argues that consideration of the *Burnet* factors would support the trial court's orders.

However, the court in *Blair* expressly rejected the premise that "an appellate court can

consider the facts in the first instance as a substitute for the trial court findings that our precedent

requires." 171 Wn.2d at 351. Therefore, we decline to conduct our own *Burnet* analysis.

4. Harmless Error

Parsons argues that even if the trial court erred, the error was harmless because Caldera

received a favorable verdict and that Caldera fails to explain how the outcome would have

differed if Dr. Chong had testified. Caldera responds that the error was not harmless because she

was forced to try the case without a medical expert and the jury likely would have awarded more

in damages if they had heard Dr. Chong's testimony. We agree with Caldera.

In *Jones*, the Supreme Court ruled that an error regarding consideration of the *Burnet*

factors was subject to a harmless error analysis. 179 Wn.2d at 338, 355-56. Under the harmless

error test in civil cases, an error is harmless when it does not materially affect the outcome of the

trial. *Needham v. Dreyer*, 11 Wn. App. 2d 479, 497, 454 P.3d 136 (2019), *review denied*, 195 Wn.2d 1017 (2020). More specifically, the court in *Jones* determined that the trial court's errors in its *Burnet* analysis were harmless because much of the excluded testimony was "irrelevant or unfairly prejudicial" and was "cumulative and largely undisputed." 179 Wn.2d at 356, 358.

Initially, Parsons seems to argue that Caldera cannot prove that she was prejudiced by the trial court's exclusion of Dr. Chong's testimony and that the record precludes this court from reviewing the trial court's order to exclude because Caldera never provided the trial court with a summary of Dr. Chong's testimony or an expert report. Therefore, she claims that the record is insufficient for review. However, Parsons fails to recognize that Caldera has no burden to prove that the error was *not* harmless. Parsons has the burden of proving that the error *was* harmless. *See ADA Motors, Inc. v. Butler*, 7 Wn. App. 2d 53, 59-60, 432 P.3d 445 (2018) (holding that the defendant failed to show that the *Burnet* violation was harmless error). In any event, the record contains a copy of Dr. Chong's video deposition transcript. And we can presume that Dr. Chang's trial testimony would have been similar.

Based on the transcript from his perpetuation deposition, Dr. Chong likely would have provided expert medical testimony that (1) Dawn suffered ongoing posttraumatic headaches as a result of the accident, (2) Dawn suffered from ongoing accident-related neck and back pain for the year and a half between the accident and her death, (3) her injuries made it more difficult for her to cope with her cancer treatment, (4) all of her treatment was medically necessary for injuries caused by the accident, and (5) all of her medical expenses with the exception of approximately $4,350 charged by one doctor were reasonable and necessary. No other trial witness was able provide expert testimony on these issues.

Using the *Jones* analysis, Dr. Chong's testimony certainly was relevant and it was not unfairly prejudicial. In addition, the testimony was not cumulative. There were lay witnesses who testified about Dawn's memory and physical abilities before and after the car accident. But none of those witness could provide expert medical testimony regarding Dawn's injuries and their relation to the accident. And no other witness could testify about the reasonableness and necessity of Dawn's medical treatment and bills. Further, without Dr. Chong's testimony, the testimony Parsons presented from Dr. Tesar was unrebutted.

Because Dr. Chong's testimony was excluded, Caldera could not establish the necessary medical testimony to recover her incurred medical expenses. *See Lakes v. von der Mehden*, 117 Wn. App. 212, 219, 70 P.3d 154 (2003) (implying that expert testimony is required to establish the reasonableness and necessity of past medical expenses unless the defendant admits that certain medical expenses were reasonably necessary); *Patterson v. Horton*, 84 Wn. App. 531, 543, 929 P.2d 1125 (1997) (stating that a plaintiff cannot rely solely on medical records and bills to prove that past medical costs were reasonable). All she could recover were the expenses incurred in the first three months, totaling $18,259.14, and only because Parsons conceded that amount. But the total medical expenses Caldera claimed were $44,066.55, probably with the $4,350 deduction that Dr. Chong applied.

The trial court's exclusion of Dr. Chong's testimony forced Caldera to try a personal injury case without a medical expert and without the ability to contradict the testimony of Parsons' medical expert. No other witness was able to provide the expert testimony that the trial court excluded and as a result, Caldera was unable to prove the full extent of her reasonably necessary medical expenses. Under these circumstances, we conclude that the trial court's error in excluding Dr. Chong's testimony without considering the *Burnet* factors was not harmless.

5.    Remedy

No court has addressed the appropriate remedy for a trial court's failure to consider the

*Burnet* factors before excluding a witness when the case went to trial.  In *Burnet*, the court

remanded for a new trial on a particular issue after the court concluded that the trial court had

erred in granting a protective order prohibiting discovery on that issue.  131 Wn.2d at 491, 499.

However, here we are not concluding that excluding Dr. Chong's testimony was error, only that

the trial court erred in failing to consider the *Burnet* factors.

Other cases also involve different facts.  In *Blair*, the court reversed a summary judgment

dismissal after the trial court excluded several witnesses without making any *Burnet* findings.

171 Wn.2d at 344.  In *Teter*, the trial court actually ordered a new trial after finding that a

different judge had improperly excluded an expert witness in violation of *Burnet*, and the

appellate court affirmed the grant of a new trial.  174 Wn.2d at 210.  And in *Jones*, the court

determined that the *Burnet* violation was harmless error and affirmed the trial court's judgment.

179 Wn.2d at 326.

Here, we have not determined whether excluding Dr. Chong's testimony was proper

under a *Burnet* analysis.  This determination can be made only after the trial court actually

considers the *Burnet* factors in addressing the exclusion of Dr. Chong's testimony.  Therefore,

we remand for the trial court to reconsider, applying the appropriate *Burnet* analysis, both

Parsons' motion to exclude Dr. Chong and Caldera's motion to allow Dr. Chong's testimony

after the trial was continued.

If the trial court determines that exclusion was proper for both motions, the jury's

damages verdict will stand.  However, the court must make the explicit findings required by

*Burnet* with regard to both motions.  But if the *Burnet* inquiry does not support the exclusion of

Dr. Chong with regard to either motion, the trial court must order a new trial on the issue of damages only.

B.      REASSIGNMENT TO A DIFFERENT JUDGE ON REMAND

Caldera requests that this case be remanded to a different judge. She claims that reassignment is necessary because the trial court repeatedly refused to apply the *Burnet* factors and took other actions that favored Parsons. We agree.

We have authority to reassign the case to a new judge on remand. *State v. Solis-Diaz*, 187 Wn.2d 535, 540, 387 P.3d 703 (2017). Reassignment to a new judge is appropriate if the trial court will exercise discretion on remand regarding the issue that triggered the appeal and apparently has prejudged the issue. In addition, "where review of facts in the record shows the judge's impartiality might reasonably be questioned, the appellate court should remand the matter to another judge." *Id.*

Here, the trial court's error was egregious. In three separate motions, the court ignored well-established law requiring the court to consider the *Burnet* factors even though Caldera cited the appropriate law. This blatant disregard of the law suggests that the trial court has prejudged whether Dr. Chong should be excluded and calls into question whether the trial court can fairly apply the *Burnet* analysis on remand. Therefore, we remand the case to a new judge.

CONCLUSION

We hold that the trial court erred in excluding Dr. Chong's testimony without considering the *Burnet* factors, and we remand to a new judge for the trial court to consider the *Burnet* factors and to determine whether exclusion of Dr. Chong was appropriate both before and after the trial continuance.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

SUTTON, A.C.J.

GLASGOW, J.